## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 04-CV-351-JHP-FHM |
| | ) |
| KARL JOBST, individually, KARL JOBST, | ) |
| P.C., and JOSEPH CHANDLER, as Administrator | ) |
| of the Estate of Helen Grace Chandler, Deceased, | ) |
| | ) |
| | ) |
| Defendants. | ) |

# **ORDER**

Now before the court is Plaintiff's Motion for Summary Judgment, Defendants' Response to said motion and Plaintiff's Reply. Defendants Karl Jobst (individually), Karl Jobst, P.C., and Joseph Chandler as the Administrator of the Estate of Helen Chandler, cooperatively seek to collect the proceeds of Allstate's business liability policy covering Karl Jobst, P.C. Allstate's contract provides general liability protection for the professional dentistry corporation, Karl Jobst, P.C. One of the limited optional protections under the policy is for liability arising out of the negligent operation of a non-owned auto while being used for corporate business. Defendants claim that this limited protection applies in the instant case.

Plaintiff seeks a Declaratory Judgment finding Allstate has no duty to indemnify or defend either Karl Jobst (individually) or Karl Jobst, P.C. Plaintiffs argue the accident in this case involved an automobile owned by Karl Jobst (individually), and Karl Jobst was not involved in corporate business at the time of the collision. Plaintiff also contends there is no liability on its part due to a comprehensive agreement between the parties to this litigation, as well as Karl Jobst's automobile insurer, GEICO Insurance Company, entitled Covenant Not to Execute, entered on November 29, 2004.[1]

---

[1] The Court need not address the section of the policy providing limited optional protection, which resolution would necessarily involve disputed facts, as the Plaintiff's argument regarding the Covenant Not to Execute is dispositive of this case.

**DISCUSSION**

In general, summary judgment is proper where the pleadings depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. An issue of fact is "genuine" if the evidence is significantly probative, or more than merely colorable, such that a jury could reasonably return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. *Id.* at 249.

In considering a motion for summary judgment, this court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988). Furthermore, if on any part of the prima facie case there is insufficient evidence to require submission of the case to the jury, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). In addition, one of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

The record reveals that on the evening of Friday, June 13, 2003, Defendant Karl Jobst met Helen Chandler at his home in Grove, Oklahoma and prepared to go out for the evening. Ms. Chandler lived in Tulsa, Oklahoma, and worked for a dentist in Owasso, Oklahoma, but she often spent the weekends with Jobst at his home in Grove. Chandler had been romantically involved with Jobst for approximately five years, living with him for several years before she moved to Tulsa. Chandler usually stayed with Jobst when she visited Grove on the weekends. Around 7:00 p.m. Jobst and Chandler drove to Joplin, Missouri, for dinner as they had on numerous other occasions. However, Jobst claims that on this particular night he and Chandler's dinner trip of June 13, 2003, was purely for "business purposes." He also claims that Chandler "owned" the car that was involved in the accident.

The pair traveled to Joplin in a 1999 white BMW M3 convertible which Jobst had (1) purchased, (2) titled, (3) insured with GEICO; and (4) borrowed $28,000 on from the Bank of Oklahoma – all of which he did in his own name as owner of the car, in the ten (10) days immediately prior to the accident. Jobst drove the car that evening. In Joplin, Chandler and Jobst went to a restaurant called "Club 609," consuming more than two bottles of wine. On the way back to Oklahoma, they heard a radio announcement for a nightclub called "The Shadow Lake Bar" in Noel, Missouri, and detoured to pay a visit. After the accident, Jobst told Chandler's sister, Betty Cartwright, they had decided to stop by the bar to check out the dancing, but he has testified in this case that the purpose of stopping by the bar at midnight was to conduct further "dentistry business" with Chandler. Almost immediately upon leaving the bar in the early morning hours of June 14, 2003, they were involved in a single-car accident when Jobst lost control of the car. He was injured and Chandler was killed. Both Jobst and Chandler were intoxicated.

The following Monday morning, Joseph Chandler filed a lawsuit in Delaware County against Jobst individually alleging that Helen Chandler was a passenger in Jobst's car, that Jobst's negligence was the cause of Helen Chandler's death and praying for both actual and punitive damages. GEICO, Jobst's automobile insurer for the 1999 BMW automobile, provided a defense and filed pleadings and papers on his behalf. In his Answer, Jobst denied Joseph Chandler's claims and asserted various affirmative defenses.

Plaintiff contends that on June 4, 2004, the relationship between Jobst and Joseph Chandler changed from disputing litigants to cooperative partners whose singular objective was collecting Allstate's business insurance for the Chandler estate. All parties directly and indirectly tied to the Delaware County litigation, including Karl Jobst individually, Karl Jobst, P.C., Joseph Chandler as Administrator of the Estate of Helen Chandler and GEICO Insurance Company, entered into a comprehensive agreement entitled Covenant Not to Execute ("Covenant"). In this contract they agreed as follows:

a. GEICO, on behalf of Karl Jobst, would pay Jobst's auto liability policy limits of coverage ($100,000.00) to the Plaintiff.

b. In return for the payment of GEICO's limits of auto liability coverage, both Karl Jobst individually and Karl Jobst, P.C. were completely absolved from legal liability for the payment of any damages as a result of the death of Helen Chandler. Karl Jobst's personal assets and the corporate assets of Karl Jobst, P.C. were specifically exempted from all claims or actions arising from Chandler's injury and death.

c. Karl Jobst was required by this agreement to "aggressively pursue" coverage against Allstate and "zealously defend" this federal declaratory judgment action over Allstate's disputed coverage, "in order to procure insurance coverage."

On November 29, 2004, once the Covenant was fully executed, GEICO made application to withdraw its defense of Karl Jobst in the Delaware County action. That same day, Joseph Chandler amended his Petition to add Karl Jobst, P.C. to the suit, alleging vicarious liability for the acts of Karl Jobst as the corporation's "agent." Both Jobst and Jobst, P.C., represented by the same counsel as in this declaratory action, filed Answers admitting liability and dropping all the previously pled affirmative defenses.

Based on the undisputed record, the court finds Plaintiff owes no duty of indemnification or defense on behalf of Karl Jobst P.C. due to the legal effect of the Covenant not to Execute. Allstate's policy provides, "we will pay on behalf of persons insured all sums which they become legally obligated to pay as damages because of an accidental event. . . ." The named insured is the corporation. It is well-settled law in Oklahoma that the unambiguous words in a contract are to be interpreted according to their ordinary and popular meaning. *Koch Fuels, Inc. v. State ex rel Okla. Tax Commission*, 862 P.2d 471, 475 (Okla. 1993) citing *Mercury Inv. Co. v. F.W. Woolworth Co.*, 706 P.2d 523, 529 (Okla. 1985).

Defendant Joseph Chandler's Amended Petition in the Delaware County lawsuit asserts that at the time

3

of the accident, Karl Jobst was acting in his "business capacity" as the agent of Karl Jobst, P.C., and thus, Jobst, P.C. is vicariously liable for damages. Vicarious liability is a derivative claim, and a plaintiff's affirmative act resulting in destruction of the legal liability of the servant releases the master by operation of law. *Sisk v. J.B. Hunt Transp., Inc.*, 81 P.3d 55 (Okla. 2003). "Uninterrupted viability of the claim against a servant is the sine qua non of the master's continued liability in respondeat superior. Once, by an act of the plaintiff, the servant becomes impervious to legal responsibility, the master stands released." *Id. at 60.* See also, *Frey v. Independence Fire & Cas.Co.*, 698 P.2d 17 (Okla. 1985).

Here the terms of the Covenant absolve Karl Jobst, P.C. of liability for damages in exchange for the payment of the GEICO automobile liability policy limits. Jobst, P.C. is protected against claims involving liability for the payment of any damages as a result of the death of Helen Chandler. Moreover, the corporation's assets are expressly exempted from all claims or actions arising from Chandler's injury and death. Therefore, the result of the Covenant is that Karl Jobst, P.C. was contractually absolved of any legal obligation to pay damages to Helen Chandler's estate. No coverage is provided under Allstate's policy in these circumstances. Like any other contract, where there is no ambiguity, an insurance policy should be construed to enforce its terms. *Catts Co. v. Gulf Ins. Co.*, 723 F.2d 1494, 1501 (10th Cir. 1983); *Nat'l Indem. Co. v. U.S. Pollution Control*, et al, 717 F.Supp. 765, 766 (W.D. Okla. 1989)(finding the word "damages" should be construed in its ordinary sense, the court noted, "[u]nless it affirmatively appears otherwise, terms in an insurance policy should be construed according to their plain, ordinary and accepted use in common speech.") See also, *Idg, Inc. v. Cont'l Cas. Co.*, 275 F.3d 916, 921 n. 2 (10th Cir. 2001), cert denied, 536 U.S. 940.

Pursuant to the Allstate contract and Oklahoma law, Allstate's obligation to indemnify does not rest on mere "fault" by an insured, or upon a "judgment" being sought, or entered against its insured. The obligation exists only, if and to the extent, the insured himself is "legally obligated to pay damages." By express contract between the Chandler estate and Jobst, P.C. that legal obligation was removed. Other courts have determined that a Covenant Not to Execute between a claimant and an insured relieves the insurer of the obligation to pay damages that the insured has no legal obligation to pay. *See, e.g., Freeman v. Schmidt Real Estate & Ins.*, 755 F.2d 135 (8th Cir. 1985). ( "[A]n insured protected by a covenant not to execute has no compelling obligation to pay any sum to the injured party; thus, the insurance policy imposes no obligation on the insurer.")* The courts that have adopted such a view have done so based largely on two basic principles: (1) a plain meaning interpretation of the policy language at issue requires such a result, and (2) the failure to so decide opens the door for the possibility of collusion between the insured and claimant. "Such collusion, [ ], would be possible anytime the insured was protected by an agreement not to execute prior to the entry of judgment; the insured thus loses the incentive to contest his liability, or the extent of the injured party's damages, either in negotiation or at trial." *Freeman v. Schmidt Real Estate & Ins.*, 755 F.2d at 139; see also, *Cont'l Casualty Co. v. Hempel, et al*, 4 Fed Appx. 703 (10th Cir. N.M.) unpublished (such agreements have a high potential of fraud or collusion because there is no personal exposure). This precise situation appears to have occurred in the

instant case where, once GEICO withdrew, Chandler's estate amended to include Jobst, P.C., all negligence allegations were promptly admitted, and all affirmative defenses were abandoned by Jobst and Jobst, P.C.

Accordingly, because Karl Jobst is absolved from legal liability for paying damages by the Covenant Not to Execute, Karl Jobst, P.C., is released as a matter of law. Plaintiff's Motion for Summary Judgment is therefore granted.

**IT IS SO ORDERED** this 8th day of August 2005.

James H. Payne
United States District Judge
Northern District of Oklahoma